**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | : | **Chapter 11** |
| | : | |
| **GREEN GOBLIN, INC.,** | : | **Bky. No. 09-11239 ELF (DISMISSED)** |
| | : | |
| Former Debtor. | : | |

| | | |
|---|---|---|
| | : | |
| **GREEN GOBLIN, INC.,** | : | |
| | : | |
| Plaintiff, | : | **Adv. No. 09-067** |
| | : | |
| v. | : | |
| | : | |
| **WARREN SIMONS,** | : | |
| | : | |
| Defendant. | : | |

# O R D E R

**AND NOW WHEREAS:**

A. On **May 11, 2012**, the court entered judgment in favor of the Defendant Warren Simons ("Simons") and against the Plaintiff Green Goblin, Inc. ("Green Goblin") in the above adversary proceeding for the reasons stated in the accompanying Opinion. See In re Green Goblin, Inc., 2012 WL 1656566 (Bankr. E.D. Pa. May 11, 2012).

B. On **May 25, 2012**, Green Goblin filed a Motion for Reconsideration of the court's **May 11, 2012** Order ("the Motion").

C. The Motion is governed by Fed. R. Civ. P. 59(e), made applicable in this adversary proceeding by Fed. R. Bankr. P. 9023 and was filed timely.[1]

---

[1]     Fed. R. Bankr. P. 9023 differs from Fed. R. Civ. P. 59(e) in one respect.  The deadline
(continued...)

-1-

D.  Rule 59(e) authorizes the court to alter or amend a prior judgment based upon one of the

following grounds:

> (1) an intervening change in the controlling law;

> (2) the availability of new evidence that was not available when the court granted the
> motion for summary judgment; or

> (3) the need to correct a clear error of law or fact or to prevent manifest injustice."[2]

E.  The Motion is based on both prongs of the third ground for reconsideration described in the

previous paragraph, i.e., (a) clear error of law or fact and  (b) to prevent manifest injustice.

F.  It is well established that courts should grant Rule 59(e) motions "sparingly because of their

strong interest in finality of judgment."[3]

---

[1](...continued)
for filing a motion under Rule 9023 is fourteen (14 ) days after the entry of judgment, not the twenty-
eight (28) day deadline stated in Rule 59(e).

[2]     E.g., In re Roemmele, 466 B.R. 706, 711-712 (Bankr. E.D. Pa. 2012) (citing cases).  In
Roemmele, I stated the following regarding the meaning of the term "manifest injustice" in Rule 59(e):

> There is no judicial consensus . . . but several courts have applied the
> Black's Law Dictionary definition, which states that "manifest injustice" is an
> error in the trial court that is direct, obvious, and observable, such as a
> defendant's guilty plea that is involuntary or that is based on a plea agreement
> that the prosecution rescinds.  A party may only be granted reconsideration
> based on manifest injustice if the error is apparent to the point of being
> indisputable.  In order for a court to reconsider a decision due to "manifest
> injustice," the record presented must be  so patently unfair and tainted that the
> error is manifestly clear to all who view it.

466 B.R. at 712 (quotation marks and citations omitted).

[3]     In re Kuhar, 2007 WL 2245912, *2 (Bankr. E.D. Pa. Aug. 1, 2007) (citations omitted);
see also Fanelli v. Continental Cas. Co., 2006 WL 3387187, at *2 (M.D. Pa. Nov. 21, 2006)
("reconsideration of judgment is an extraordinary remedy, and such motions should be granted
(continued...)

-2-

G. Further, a Rule 59(e) motion is not a vehicle to relitigate matters already considered by the court.[4]

H. The Motion presents no arguments not previously considered by the court or any persuasive argument that the court previously committed a manifest error of law or fact.[5]

---

[3](...continued)
sparingly") (citation omitted).

[4]        See, e.g., Conway v. A.I. duPont Hosp. for Children, 2009 WL 1492178, at *2 (E.D.Pa. May 26, 2009) ("Parties may not use rule 59(e) motions as a vehicle to ask ... courts to rethink what they have already thought through—rightly or wrongly") (internal citations and quotations omitted); In re Scotto-DiClemente, 463 B.R. 308, 310 (Bankr. D.N.J. 2011 ("[a] motion for reconsideration is not to be used as a means to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant") (quoting Ogden v. Keystone Residence, 226 F.Supp.2d 588, 606 (M.D. Pa. 2002)).

[5]        In its lengthy, somewhat diffuse, Memorandum of Law, Green Goblin puts forth three (3) distinct arguments in support of its assertion that the court committed manifest errors of law or fact.

        First, Green Goblin disputes the statement in the opinion that no evidence was introduced at trial to establish (as was Green Goblin's burden) that it had not operated for at least two (2) years above the "Cash Flow Minimum Ratio," see 2011 WL 1656566, at *7, thereby suggesting that the court committed a manifest error in its factfinding. Green Goblin claims that the court overlooked evidence that in Exs. P-6 and P-11 that it had not achieved the Cash Flow Minimum Ratio.

        This assertion is easily and quickly refuted. Exs. P-6 and P-12 were not admitted into evidence. See N.T. at 2, 115-116. The court could not have erred by disregarding matter that was outside the evidentiary record. Moreover, even if there had been evidence that Green Goblin never achieved the Cash Flow Minimum Ratio (and assuming that the restrictions did not expire upon the maturation of the Note), the outcome would have been the same. If, as Green Goblin contends, it was not in default because it had not achieved the Cash Flow Minimum Ratio, that would establish only that Simons prematurely and improperly invoked his remedies for breach of contract, either because Green Goblin was not in default at all or because a condition precedent to the exercise of remedies for breach had not occurred. Either way, proof that Green Goblin had not achieved the Cash Flow Minimum Ratio would not have established that the remedy restrictions in the Proietto-Green Goblin Note were promises giving rise to contractual remedies for breach.

        This leads to Green Goblin's second contention – that the court erred in construing that the restrictions on Simons's right to exercise default remedies in the Proietto-Green Goblin Note to be contractual conditions, rather than promises whose breach give rise to a right to damages. See 2012 WL
                                                                                        (continued...)

-3-

[5](...continued)
1656566, at *13-14. However, Green Goblin has offered no convincing argument that the methodology
employed in interpreting the Proietto-Green Goblin Note was flawed.

Green Goblin seems to suggest that because the various agreements entered into by and
among BLC, the SBA, the Proiettos, Green Goblin, Sabertooth, Venom, Kevin Burke, Teresa Burke and
John DePrince were integral parts of a single, unified transaction for the purchase of the King of Prussia
Swim Club, Inc. assets and the underlying real estate, that it necessarily follows that when the Proiettos
made certain contractual promises to BLC, they made the same promises to Green Goblin. The unified
nature of the transaction provides context and some assistance in ascertaining the parties' intentions (to
the extent that they were not unambiguously expressed in any one of the particular writings that
memorialized the transaction), but it does not establish that all of the provisions of one contract are
necessarily imported into another contract. In the present context, the unified nature of the transaction
does not establish that the Proiettos' promises to BLC were also enforceable, contractual promises to
Green Goblin.

Further, and contrary to Green Goblin's suggestion, in interpreting and construing the
Proietto-Green Goblin Note, due consideration was given to the fact that it and the other agreements
entered into by the parties, were designed to effectuate a single transaction. Indeed, largely for that
reason, and notwithstanding several contrary textual clues in the Proietto-Green Goblin Note, I concluded
that the restrictions on the exercise of Simons' contractual remedies imposed by Paragraph 4 of the
Standby Agreement were incorporated in the Proietto-Green Goblin Note. Id. at *10-12. However, after
reaching that conclusion, I engaged in a separate inquiry to ascertain the precise nature of the restrictions
and, in particular, whether they were in the nature of contractual conditions or promises. Based on the
text of the documents and my evaluation of the testimony regarding the parties' negotiations (which was
meager and indefinite as to whether the Proiettos made an affirmative promise to Green Goblin), I
concluded that the remedy restrictions were imported into the Proietto-Green Goblin Note as conditions,
not promises.

In the Motion, Green Goblin has not identified any legal errors in my determination that
the remedy restrictions from the Standby Agreement were incorporated into the Proietto-Green Goblin
Note as conditions, rather than promises. It appears that Green Goblin disagrees with my assessment of
the evidence and my factual determinations regarding the parties' intent. Green Goblin has pointed to no
manifestly clear error. It is simply attempting to relitigate a point of disagreement it has with the court.
This is not a basis for relief under Rule 59(e). See n.4, supra.

Third, and finally, Green Goblin characterizes as a "clear error law," the statement in the
Opinion that in the absence of a breach of an express contractual promise, the exercise of contractual
default remedies may, in some circumstances, give rise a claim for a breach of the implied duty of good
faith and fair dealing. (Motion at 28). Green Goblin cites several cases for the proposition that a breach
of that duty does not give rise to an independent cause of action if the conduct at issue violates an express
contractual duty. See, e.g., Rosiji v. City of Philadelphia, 2012 WL 1646726 (E.D. Pa. May 9, 2012);
Nova Financial Holdings Inc. v. Bancinsure, Inc., 2012 WL 1322932 (E.D. Pa. April 17, 2012). Green
Goblin has accurately stated the law. A claim for breach of the duty of good faith and fair dealing would
(continued...)

-4-

I.  The Motion presents no persuasive argument that reconsideration is necessary to prevent

manifest injustice.[6]


It is therefore, **ORDERED** that the Reconsideration Motion is **DENIED**.


Date:  May 31, 2012
                            _____
                            **ERIC L. FRANK**
                            **U.S. BANKRUPTCY JUDGE**


---

[5](...continued)
not lie if Green Goblin has made out a valid claim for breach of contract based on the theory that Simons
was subject to a contractual promise to forbear from exercising contractual remedies.  However, I found
that no such express promise or contractual duty existed.  I then merely observed that because Simon'
conduct was not actionable as a breach of an express contractual promise, a claim may have existed for
breach of the duty of good faith and fair dealing.  This analysis is consistent with the case law Green
Goblin has cited.  In any event, the discussion was dictum and, even if it incorrectly stated the law, it had
no effect on the outcome of this proceeding.


[6]      Green Goblin asserts that the court's ruling "will result in a manifest injustice, not only
with respect to this transaction, but also to future parties who enter into agreements with the Small
Business Administration." (Motion at 17).  Green Goblin asks the court consider the "public policy
ramifications" of a decision that "appears to restrict the protections sought by the SBA." (Id.).  The
simple answer to this concern is that nothing in the decision diluted the contract rights of BLC and the
SBA.  The parties all appeared to have assumed that BLC had a right to sue Simons for the breach of the
Standby Agreement.  The issue in this proceeding was whether Green Goblin, too, had the right to sue
Simons based on conduct that was inconsistent with the Standby Agreement.  The right of BLC or the
SBA to enforce the provisions of the Standby Agreements and seek damages for its breach was not
before the court.  Therefore, any concern that the outcome of this proceeding is likely to have any
negative impact on SBA lending policy is groundless.

-5-